UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| STEPHEN GOULD CORPORATION, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:22-cv-00771-MTS |
| ) | |
| BUCKEYE INTERNATIONAL, INC., ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM AND ORDER

Plaintiff filed a one-count Complaint against Defendant for action on account under Missouri law, claiming that Defendant—a producer of hand sanitizers and other cleaning products—has failed to pay it for foaming pumps and trigger sprays that Defendant ordered from Plaintiff.  This matter is now before the Court on Plaintiff's Motion for Summary Judgment, which seeks summary judgment on its sole claim, and on Defendant's Motion for Summary Judgment, which seeks summary judgment on its counterclaims.  Because neither party established that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law, the Court will deny the Motions.

**I.      Legal Standard**

Under Federal Rule of Civil Procedure 56(a), "a court must grant a motion for summary judgment if the moving party shows that there are no genuine disputes of material fact and that it is entitled to judgment as a matter of law." *Bedford v. Doe*, 880 F.3d 993, 996 (8th Cir. 2018) (citing Fed. R. Civ. P. 56(a)).  The moving party always

"bears the initial responsibility of informing the district court of the basis for its motion and must identify the portions of the record that it believes demonstrate the absence of a genuine dispute of material fact." *Bedford*, 880 F.3d at 996 (citing *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc)); *accord* Fed. R. Civ. P. 56(c)(1).

When the movant would bear the burden of proof at trial—as is the case in both Motions here—the movant "must lay out the elements of its claim, citing the facts it believes satisfies those elements, and demonstrating why the record is so one-sided as to rule out the prospect of the nonmovant prevailing." 10A C. Wright, A. Miller, & M. Kane, *Federal Practice and Procedure* § 2727.1 (4th ed.); *accord, e.g.*, *Hotel 71 Mezz Lender LLC v. Nat'l Ret. Fund*, 778 F.3d 593, 601 (7th Cir. 2015); *Guzman v. Allstate Assurance Co.*, 18 F.4th 157, 160 (5th Cir. 2021) (explaining that when the movant carries the burden of proof at trial, the movant "must establish beyond peradventure *all* of the essential elements of the claim or defense" (internal quotations omitted)).

To do so, the moving party "must support its motion with credible evidence—using any of the materials specified in Rule 56(c)—that would entitle it to a directed verdict if not controverted at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (1986) (Brennan, J., dissenting); *accord Firemen's Fund Ins. Co. v. Thien*, 8 F.3d 1307, 1310 (8th Cir. 1993). Like with a motion for a directed verdict, the movant must have "present[ed] such proof of the existence of the element that no fact-finder could reasonably find against him." Martin B. Louis, *Federal Summary Judgment Doctrine: A Critical Analysis*, 83 Yale L.J. 745, 748 (1974); *accord Soremekun v. Thrifty Payless,*

*Inc.*, 509 F.3d 978, 984 (9th Cir. 2007) (per curiam) (explaining the "movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party"). For that reason, summary judgment in favor of a party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

If the movant meets its initial burden, it "shifts the burden of production to the party opposing the motion," requiring the opposing party "to produce evidentiary materials that demonstrate the existence of a 'genuine issue' for trial." *Celotex*, 477 U.S. at 331 (Brennan, J., dissenting). Therefore, "[m]ere allegations, unsupported by specific facts or evidence beyond the nonmoving party's own conclusions, are insufficient to withstand a motion for summary judgment." *Thomas v. Corwin*, 483 F.3d 516, 526–27 (8th Cir. 2007). While the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), "all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial," *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 288–89 (1968).

**II.     Facts**

Defendant produces cleaning supplies, including, as relevant here, hand soap and hand sanitizer. Between March and August 2020, Defendant submitted twenty-three purchase orders to Plaintiff for pumps and trigger sprays, for delivery between June and

November 2020, to use in their products' packaging.  Plaintiff accepted the purchase orders and began incurring expenses in relation to furnishing the items Defendant ordered.

The purchase orders noted that they were governed by and subject to Defendant's standard terms and conditions, which included a provision that stated "[t]ime [wa]s of the essence in all deliveries and other performance hereunder."  Doc. [1-2].  The terms and conditions also provided that each "contract c[ould] be modified or rescinded and claims or rights under it c[ould] be waived, only by a writing signed by a duly authorized agent" of Defendant.  *Id.*  The terms and conditions also provided that Defendant "reserve[d] the right to cancel all further performance" of a purchase order if Plaintiff "d[id] not make deliveries" as specified in the purchase order.  *Id.*

Delays in the deliveries arose, and Plaintiff failed to make the deliveries under the purchase orders by the dates therein.  Prior to missing these deadlines, though, Plaintiff communicated with Defendant multiple times, informing Defendant of the delays.  Defendant often seemed to continue to express some degree of interest in receiving the orders.  For example, Plaintiff once informed Defendant about a delay and, in response, one of Defendant's employees responded that the updated timeline on the order "was good."  Doc. [64-15].  Defendant's employee went further, instructing Plaintiff to ship the already-delayed order via "ocean freight (or slower)."  *Id.*  There is also evidence showing that, at least at some point prior to these orders at issue, Plaintiff would store products for Defendant.  That is, at least for a time prior to the dispute at issue, it was not uncommon for Defendant's orders to be warehoused for a matter of months, including

- 4 -

after the delivery dates on a purchase order, until Defendant would request the release of the product.

In the end, Plaintiff did not complete delivery of any of the orders at issue to Defendant by the delivery date on the purchase orders, and Defendant eventually cancelled all the orders at issue. Defendant has declined to pay Plaintiff under the purchase orders.

**III.    Discussion**

       A.   <u>Plaintiff has not shown it is entitled to summary judgment on its claim</u>.

          *i. Proving the Essential Elements*

Plaintiff brought just one claim in this action, a claim for action on account. As Defendant correctly points out, Plaintiff's claim "ignores [the] key fact[]" that "the parties had contracts" with one another in the form of purchase orders. Doc. [80] at 9. "An action on account is an action based in contract." *Massac Env't Techs., Inc. v. Futura Coatings, Inc.*, 929 S.W.2d 318, 320 (Mo. Ct. App. 1996) (Rhodes Russell, J., for the Court). However, in instances where parties have an express contract with one another, the action should be a breach of contract and not an action on account. *See Exec. Jet Mgmt. & Pilot Serv., Inc. v. Scott*, 629 S.W.2d 598, 607 (Mo. Ct. App. 1981) (noting "plaintiff's cause of action could hardly be characterized as a suit on account" where evidence showed "oral bilateral contract agreements"); *see also Heritage Roofing, LLC v. Fischer*, 164 S.W.3d 128, 133 (Mo. Ct. App. 2005); *Flo-Prod. Co. v. Valley Farms Dairy Co.*, 718 S.W.2d 207, 209 (Mo. Ct. App. 1986).

It is undisputed that the transactions here are all subject to express contracts.  Try as it might, "[P]laintiff may not relieve itself of its obligations" under the governing contracts "by the device of suing on an account."  *See St. Louis Testing Lab'ys, Inc. v. Miss. Val. Structural Steel Co.*, 254 F. Supp. 47, 53 (E.D. Mo. 1966), *aff'd*, 375 F.2d 565 (8th Cir. 1967).  Rather, Plaintiff's claim becomes one for breach of contract.  35 Robert H. Dierker & Richard J. Mehan, *Missouri Practice Series: Contract, Equity, & Statutory Actions Handbook* § 4:11 (2024 ed.) (explaining that when "parties introduce evidence showing an express contract, the action becomes a breach of contract action and not an action on account"); *cf. Hopkins v. Goose Creek Land Co.*, 673 S.W.2d 465, 468 (Mo. Ct. App. 1984) (explaining jury properly was given verdict director for breach of contract rather than for an action on account where both parties testified to the existence of an agreement).  Consequently, to establish that it is entitled to summary judgment on its claim, Plaintiff must prove a breach of contract.

To do so, Plaintiff must establish "(1) the existence and terms of a contract; (2) that [it] performed or tendered performance pursuant to the contract; (3) breach of the contract by the [D]efendant; and (4) damages suffered by the [P]laintiff."  *See Amoroso v. Truman State Univ.*, 683 S.W.3d 298, 304 (Mo. Ct. App. 2024) (quoting *Keveney v. Mo. Mil. Acad.*, 304 S.W.3d 98, 104 (Mo. banc 2010)).  Plaintiff did not meet its burden to show that no reasonable trier of fact could find other than for it on this claim.  *See Soremekun*, 509 F.3d at 984.  The purchase orders are clear; Plaintiff was to deliver the ordered product by the delivery dates specified in each purchase order.  Although Defendant's terms and conditions specified that "[t]ime is of the essence in all deliveries

- 6 -

and other performance," Doc. [1-2], Plaintiff failed to show that it successfully delivered any of the orders on time. It therefore has not shown that it performed pursuant to the contract.

>  *ii. Waiver*

Plaintiff likewise failed to demonstrate that Defendant waived or modified the time provisions. Generally, a "time condition may be waived . . . by any expression or conduct of the obligee that leads the obligor reasonably to believe that performance on time is not required." *Austin v. Pickett*, 87 S.W.3d 343, 348 (Mo. Ct. App. 2002); *accord Old Navy, LLC v. S. Lakeview Plaza I, LLC*, 673 S.W.3d 122, 132 (Mo. Ct. App. 2023) ("Parties can implicitly waive contractual rights."). But, here, the terms and conditions of the purchase orders provided that they could "be modified or rescinded and claims or rights under [them] c[ould] be waived only by a writing signed by a duly authorized agent of Buyer." Doc. [64-7]. Because the contract provides what constitutes a waiver, it controls. *See Bydalek v. Brines*, 947 S.W.2d 135, 143 (Mo. Ct. App. 1997) (explaining the "policy of the law" is to leave parties "free to make whatever contract between themselves that they please"); *see also Stahlhuth v. SSM Healthcare of St. Louis*, 289 S.W.3d 662, 670 (Mo. Ct. App. 2009) ("If the language of the agreement addresses the matter in dispute, the inquiry ends.").[1] Plaintiff has failed to point to evidence establishing that a duly authorized agent of Defendant provided such a signed waiver or modification.

---

[1] The parties have not argued that anything beyond Missouri common law governs the modification and waiver provision of the contracts at issue here. *See, e.g.*, Mo. Rev. Stat. § 400.2-209.

Without a signed waiver by a duly authorized agent of Defendant, Plaintiff could succeed only if it established that Defendant impliedly waived not only the delivery and time provisions but also waived the provision on waivers itself.  *See* 13 *Williston on Contracts* § 39:36 (4th ed.) (noting the "general view" that even an anti-waiver provision in a contract can be waived but that "the party asserting a waiver must show a clear intent to waive both the clause and the underlying contract provision"); *cf. Lopez v. GMT Auto Sales, Inc.*, 656 S.W.3d 315, 328 (Mo. Ct. App. 2022) (noting Missouri courts "treat anti-waiver provisions as any other contractual provision" and recognizing that an anti-waiver provision "heightens" a party's "protections against forfeiting" a right).

Plaintiff points to events that support its position on waiver.  It explains that it had sold goods to Defendant since 2015, and it was "common practice" for Defendant to have its orders shipped to Plaintiff's warehouse and held there until Defendant requested release.  Doc. [75] at 5.  Indeed, Plaintiff maintains they "adhered to this practice during [Plaintiff's] entire tenure as a supplier to [Defendant]."  Doc. [76] at 9.  Regarding the timing of deliveries, Plaintiff adds that it "routinely informed" Defendant "of the status and delays in receiving the product ordered."  Doc. [75] at 14.  But Plaintiff has not provided the necessary *evidence* to establish that no reasonable trier of fact could find other than that Defendant implicitly waived not only the requirements of timely delivery but also the waiver and modification provision itself.  *See* Fed. R. Civ. P. 56(c)(1)(A); *see also Austin*, 87 S.W.3d at 348 ("To rise to the level of waiver, the conduct must be so manifestly consistent with and indicative of an intention to renounce a particular right or

benefit that no other reasonable explanation of the conduct is possible."). That is to say, a reasonable factfinder could find against Plaintiff on this issue.

### iii. Equitable Redress

A recurring theme in Plaintiff's briefing on its Motion is that it would be an unjust or inequitable result if it does not prevail. *See, e.g.*, Doc. [85] at 4 (claiming "justice . . . demand[s] that [Plaintiff] be granted summary judgment"); *id.* at 7 (calling the "inequity" of Defendant's position "obvious"); *id.* at 11 (referring to something as "unbearably unjust"); *id.* at 14 (arguing that it "would be patently unfair for [Plaintiff] to suffer the consequences"). It is no surprise, then, that Plaintiff turns to equity. *See* Samuel L. Bray & Paul B. Miller, *Getting into Equity*, 97 Notre Dame L. Rev. 1763, 1780 (2022) (explaining that "[c]orrective equity" is "concerned with remedying inequity in the exercise of legal rights or powers" and that it "corrects for exceptional injustice or inequity, the risk of which inheres in law in virtue of its generality").

Equity "originated 'as an alternative to the harsh rules of common law . . . based on what was fair in a particular situation.'" *State ex rel. Leonardi v. Sherry*, 137 S.W.3d 462, 469 (Mo. banc 2004) (quoting *Equity*, *Black's Law Dictionary* (6th ed. 1990)). Equity developed for the very reason that "[c]ourts of law were restricted to following the unbending application of common-law rules and statutes." *Leonardi*, 137 S.W.3d at 468 (internal quotations omitted)); *accord Gerhardt v. Tucker*, 85 S.W. 552, 554 (Mo. banc 1905) ("Equity jurisprudence was established not to violate or override the common law, but to more effectually promote the ends of justice in cases where the common law, held within limits by its own unbinding rules, was unable to administer complete justice.").

For centuries, equity has sought "to do justice" without being "bound by strict common law rules." *Merrick v. Stephens*, 337 S.W.2d 713, 719 (Mo. Ct. App. 1960). Equity "looks to the substance rather than the form" and "will not sanction an unconscionable result merely because it may have been brought about by means which simulate legality." *Id.*; *accord Weaver v. Jordan*, 362 S.W.2d 66, 75 (Mo. Ct. App. 1962).

Plaintiff argues that the "doctrine of laches should be applied to this matter." Doc. [85] at 14. Plaintiff asserts that Defendant knew Plaintiff did not deliver the products by the dates listed in the purchase orders but still went weeks or even months without raising the issue with Plaintiff. As an example, Plaintiff points to a purchase order with a delivery date of June 22, 2020, which was not available in Plaintiff's warehouse until September 9, 2020, but that Defendant did not attempt to cancel until February 5, 2021. Plaintiff also points to instances where an employee of Defendant seemed to acquiesce or even accept some of the delays. *Id.* at 7 (citing Doc. [64-15] (employee stating the "order of production" that included the delay was "good" and requesting the products be shipped "ocean freight (or slower)")). Therefore, Plaintiff says, the Court should apply "the doctrine of laches" for the "express purpose of preventing injustice," *id.*, but laches will not prevent any such injustice here.

Laches is "a doctrine forged in the workshop of equity." *Troll v. City of St. Louis*, 168 S.W. 167, 175 (Mo. banc 1914). It is a defense only to equitable claims. *Templeton v. Cambiano*, 558 S.W.3d 101, 105 n.1 (Mo. Ct. App. 2018). Since Plaintiff's sole claim is one at law, "strictly speaking the doctrine of laches is not applicable." *UAW-CIO Loc. No. 31 Credit Union v. Royal Ins. Co.*, 594 S.W.2d 276, 281 (Mo. banc 1980); *accord*

*Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 678 (2014) (explaining that laches is "a defense developed by courts of equity," the "principal application" of which "was, and remains, to claims of an equitable cast").

Even putting the law and equity distinction aside, laches simply does not fit here. Laches prevents a claimant from *prosecuting* a claim if he unreasonably delayed asserting it, provided the delay worked to the opposing party's detriment.  See *Shelton v. Horrell*, 134 S.W. 988, 992 (Mo. banc 1911) (describing laches as "principally a question of the iniquity of permitting [a] claim to be enforced" (quoting *Galliher v. Cadwell*, 145 U.S. 368, 373 (1892))).  As the "equitable counterpart of [a] statute of limitations defense," courts use it "to avoid unfairness which can result from the prosecution of stale claims." *Kansas City Area Transportation Auth. v. Donovan*, 601 S.W.3d 262, 275 (Mo. Ct. App. 2020) (internal quotations omitted); *see also, e.g.*, *Blackburn v. Richardson*, 849 S.W.2d 281, 290 (Mo. Ct. App. 1993) (discussing the "delay in filing suit"); *Higgins v. McElwee*, 680 S.W.2d 335, 341 (Mo. Ct. App. 1984) (discussing "the delay in the commencement of the action").  Plaintiff's invocation of laches is misplaced.  Laches being the only equitable doctrine Plaintiff raises here, the harsh rigidity of the common law prevails.[2]

---

[2] Equity may well have intervened here but not via laches.  See *UAW-CIO Loc. No. 31 Credit Union v. Royal Ins. Co.*, 594 S.W.2d 276, 281 (Mo. banc 1980) (discussing equitable estoppel, a defense "frequently, though improperly," confused with laches that, unlike laches, is "available in an action at law"); *see also* Andrew Kull, *Equity's Atrophy*, 97 Notre Dame L. Rev. 1801, 1804–05 (2022) (discussing how "reduced professional awareness of basic equity doctrines," stemming from the lack of introduction of equity in U.S. law schools, has led to situations in which equity fails to intervene, even in "cases in which equitable intervention would once have been almost a matter of course").

B. <u>Defendant is not entitled to summary judgment on its counterclaims</u>.

To succeed on either its breach of contract claim or its declaratory judgment claim, Defendant needed to establish a breach of contract. Thus, Defendant needed to establish the same breach of contract elements discussed above. *See Amoroso*, 683 S.W.3d at 304. Assuming for purposes of this Motion that Defendant met its initial burden that no reasonable trier of fact could find other than for it on all the elements of breach of contract under Missouri law,[3] Plaintiff has met any burden shifted to it by raising evidence "demonstrating the existence of a triable issue of fact" as to its affirmative defense of waiver. *See United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1438 (11th Cir. 1991) (en banc).

Generally, under Missouri law, "whether a party's conduct 'can be construed as an implied waiver is a question of fact.'" *Old Navy*, 673 S.W.3d at 133 (quoting *Smith v. Md. Cas. Co.*, 500 S.W.3d 244, 250 (Mo. Ct. App. 2015)); *accord Springfield Gas & Elec. Co. v. S. Sur. Co. of Okla.*, 250 S.W. 78, 81 (Mo. Ct. App. 1923) ("Waiver is ordinarily a question of fact, and depends largely upon the intention of the party."); *cf.* 17B C.J.S. *Contracts* § 1042 (2024) (explaining the "trier of fact resolves factual questions of a waiver of contractual terms, provisions, rights, obligations, or conditions, including the question of the waiver of a contract breach, . . . a failure to comply with a

---

[3] There is no question that Defendant easily met its burden for at least some elements of its breach of contract claim. The purchase orders included a "time is of the essence" provision and clearly stated that the products had to be delivered to Defendant by a specific date, which Plaintiff failed to do. However, since the Court concludes that Plaintiff has met any burden that might have shifted to it, the Court declines to decide, for example, whether Defendant met its burden regarding the element of damages.

- 12 -

contract obligation, or a failure of strict performance of a contract"). Plaintiff has pointed to evidence showing the existence of a genuine factual dispute concerning its affirmative defense of waiver that, if ultimately successful, would defeat Defendant's counterclaims. *See Residential Funding Co. v. Terrace Mortg. Co.*, 850 F. Supp. 2d 961, 964–65 (D. Minn. 2012), *aff'd*, 725 F.3d 910 (8th Cir. 2013).

### CONCLUSION

This case has come before the Court in an unusual posture—a plaintiff and a defendant (as a counterclaimant) each seeking summary judgment solely on its own claims, not on its opponent's claims. In a motion for summary judgment, when the party with the burden of proof can demonstrate it is "deserving [of] immediate relief," it should not be forced to undergo the nuisance of "a long and worthless trial." Charles E. Clark, *The Summary Judgment*, 36 Minn. L. Rev. 567, 579 (1952). But demonstrating as much is not easy. *See Torres Vargas v. Santiago Cummings*, 149 F.3d 29, 35 (1st Cir. 1998) ("The party who has the burden of proof on a dispositive issue cannot attain summary judgment unless the evidence that he provides on that issue is conclusive." (citing *Calderone v. United States*, 799 F.2d 254, 258 (6th Cir. 1986))). Here, Plaintiff fell short of its burden. While Defendant's Motion presented a closer call, close calls on summary judgment should be resolved in favor of the nonmovant. *See E.E.O.C. v. Tepro, Inc.*, 133 F. Supp. 3d 1034, 1064 (E.D. Tenn. 2015) (citing *Rogers v. First Union Nat'l Bank*, 259 F. Supp. 2d 200, 206–07 (D. Conn. 2003) (Droney, J.)).

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Summary Judgment, Doc. [68], is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment, Doc. [61], is **DENIED**.

Dated this 6th day of September 2024.

_____
MATTHEW T. SCHELP
UNITED STATES DISTRICT JUDGE